IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TERESA A. BAKER, et al.,** : | No. 1:07-CV-0438 |
|   **Plaintiffs** : | JUDGE SYLVIA H. RAMBO |
| v. : | |
| **JUNIATA COUNTY CHILD CARE & DEVELOPMENT SERVICES, INC., TUSCARORA INTERMEDIATE UNIT 11, and COMMUNITY DEVELOPMENT INSTITUTE HEAD START, INC.,** : | |
|   **Defendants** : | |

# M E M O R A N D U M

This case arises out of the alleged failure of Juniata County Child Care and Development Services, Inc., ("JCCCDS") to pay wages to several of its employees during the month of January 2005. Before the court are motions for summary judgment filed by Defendant Tuscarora Intermediate Unit 11 ("TIU 11") and Defendant Community Development Institute Head Start, Inc., ("CDI Head Start").[1] The court has reviewed the parties' submissions and will grant the motions for summary judgment in favor of TIU 11 and CDI Head Start.

---

[1] Plaintiffs' second amended complaint incorrectly names this Defendant as "Community Development Institute."

**I.     Background**

    **A.     Facts**[2]

The United States Department of Health and Human Services Administration for Children and Families Office of Head Start oversees Head Start, "a national program . . . that provides grants to local and public and private non-profit and for profit agencies to provide comprehensive child development services to economically disadvantaged children and families . . . ."[3] JCCCDS, a Head Start grant recipient, provided childhood development services in central Pennsylvania. (Doc. 5 ¶ 37.) Plaintiffs were employees of JCCCDS during the time period of January 1, 2005 through January 28, 2005. (*Id.* ¶¶ 40, 45.) During that time, Plaintiffs, as employees, performed a variety of services for which they never received wages or benefits. (Doc. 66.)

    CDI Head Start is a private non-profit corporation, which obtains interim grants from the Office of Head Start and manages Head Start grant recipient programs when the local Head Start grantee cannot operate the program. (Doc. 58 ¶¶ 1–2.) CDI Head Start and JCCCDS do not share management and are distinct legal entities with no legal affiliation. (*Id.* ¶ 10.) Beginning in January 2005, JCCCDS could no longer manage and operate its program. (*Id.* ¶ 3.) CDI began operating the failed program, and Plaintiffs became employees of CDI Head start on January 28, 2008. (*Id.* ¶ 5.) CDI Head Start began paying wages to Plaintiffs on

---

[2] The court relies primarily on the moving parties' statements of material facts as well as Plaintiffs' second amended complaint and views all facts in the light most favorable to Plaintiffs.

[3] http://www.acf.hhs.gov/programs/ohs/about/index.html#mission (last visited October 27, 2008).

January 28, 2008, and Plaintiffs admit that CDI Head Start had not failed to pay wages to Plaintiffs. (*Id.* ¶ 6.) Plaintiffs did not perform work for CDI Head Start prior to January 28, 2008. (*Id.* ¶ 11.) CDI Head Start did not agree to compensate Plaintiffs for wages that JCCCDS failed to pay Plaintiffs. (*Id.* ¶ 7.) CDI Head Start gave Plaintiffs a new handbook and new job description at the commencement of work. (*Id.* ¶¶ 8–9.) Plaintiffs performed work for CDI Head Start until TIU 11 assumed control of a new grant from the Department of Health and Human Services to provide the region with a Head Start program. (Doc. 66 ¶ 4.) TIU 11 was created by an act of the Pennsylvania legislature to implement programs and services mandated by the Pennsylvania Department of Education. (Doc. 64 ¶ 20.) TIU 11 did not take over or otherwise acquire JCCCDS's liabilities or debts, and has no affiliation with JCCCDS. (*Id.*)

### B.   Procedural History

Plaintiffs' second amended complaint was filed on May 5, 2007. (Doc. 5.) Plaintiffs allege that all Defendants "jointly and severally" violated the Fair Labor Standards Act, 29 U.S.C. § 216, *et seq.* ("FLSA"), the Employment Retirement Income Security Act, 29 U.S.C. 1001, *et seq.* ("ERISA"), and Pennsylvania Wage Claim Payment and Collection Law, 43 Pa. Con. Stat. Ann. § 260.1, *et seq.* Plaintiffs further allege breach of contract, breach of fiduciary duty, and assert claims for unjust enrichment or quantum meruit.

#### 1.   Motion for Summary Judgment by CDI Head Start

CDI Head Start filed an answer on November 21, 2007 with four exhibits attached. (Doc. 33.) On January 31, 2008, CDI Head Start moved for judgment on the pleadings and filed a supporting brief. (Doc. 42.) Plaintiffs' brief

in opposition was filed on March 6, 2008.  (Doc. 48.)  After CDI Head Start filed its reply brief on March 18, 2008 (Doc. 51), this court issued an order converting the motion for judgment on the pleadings into a motion for summary judgment (Doc. 54.)  Plaintiffs and CDI Head Start were ordered to submit to the court all materials that would support or oppose a motion for summary judgment or, in the alternative, to show cause why the motion should not be converted.  (*Id.*)  Any filing responsive to the court order was to be filed no later than April 29, 2008.  (*Id.*)

On April 29, 2008, CDI Head Start filed a brief in support of the converted motion for summary judgment, a statement of undisputed material facts, and exhibits in support of the motion.  (Docs. 56–58.)  Plaintiffs filed nothing.  CDI Head Start moved for, and was granted, a motion for judgment on the record as it existed on April 29, 2008.  (Doc. 60.)  After multiple requests for an extension of time to file their responsive brief, Plaintiffs filed their brief in opposition to the converted motion for summary judgment and a response to the statement of undisputed material facts on July 30, 2008.  (Doc. 82.)  Plaintiffs also filed exhibits which they characterized as evidence in support of their opposition to the converted motion for summary judgment.  (Docs. 82-2–82-5.)  These exhibits, and any arguments based thereon, will not be considered because they were not timely filed.  (*See* Doc. 60.)  CDI Head Start filed its reply brief on August 6, 2008.  (Doc. 96.)  This motion is ripe for disposition.

### 2. Motion for Summary Judgment by TIU 11

Defendant TIU 11 filed a motion for summary judgment on June 11, 2008.  (Doc. 64.)  It was accompanied by a supporting brief, a statement of undisputed material facts, and supporting exhibits.  (Docs. 65–67.)  Plaintiffs filed a

responsive brief, a response to TIU 11's statement of material facts not in dispute, and supporting exhibits. (Docs. 86–87.) TIU 11 opted not to file a reply brief. Accordingly, this motion is ripe for disposition.

## II.      **Legal Standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231–32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted).

Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322–23. "'Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**III.     Discussion**

CDI Head Start and TIU 11 make nearly identical arguments in favor of summary judgment against Plaintiffs.[4] Both parties argue that they did not employ Plaintiffs at the time of the alleged failure to pay wages, that they did not take on any of JCCCDS's liabilities, that they did not make any promises to pay Plaintiffs wages allegedly owed to them by JCCCDS, and did not otherwise owe any duties or obligations arising out of JCCCDS's relationship with Plaintiffs. Plaintiffs appear to agree.[5] Plaintiffs' counsel, however, departs from the consensus view of the individual plaintiffs by (1) presenting a novel but ultimately misplaced legal

---

[4] Even Plaintiffs evidently agree with this proposition, since they filed a brief in opposition to CDI Head Start's motion for summary judgment and then filed the exact same document without any changes as a brief in opposition to TIU 11's motion for summary judgment. (*See* Docs. 82, 86.)

[5] For example, the following is a representative sample of a consensus view among the individual plaintiffs taken from interrogatories regarding the obligations and duties of CDI Head Start. "I did not work for CDI before January 28, 2005." "Does not pertain to CDI." "CDI had nothing to do with this." "My understanding is that we became CDI Head Start employees on Jan. 28th, 2005." "Didn't work for CDI till [sic] 1-28-05." "None of this applies to CDI." "None, it wasn't their place to pay our wages before 1/28/05." (Doc. 56 at 3; Doc. 57.)

6

argument based on "successor liability" and (2) a moral argument that Plaintiffs should not bear the burden of loss that resulted from JCCCDS's alleged failures.[6] In substance, Plaintiffs' counsel argues that failing to find subsequent Head Start grantees liable for the failures of prior Head Start grantees runs counter to federal and state policy, an argument more appropriately addressed to the legislature. Plaintiffs' counsel, nevertheless, maintains that to hold otherwise would undermine "[t]he second great structural principle of American Constitutional Law[,] . . . the doctrine of the Separation of Powers," "set forth in Aristotle's Politics" and "celebrated" by Montesquieu. (Docs. 82, 86 at 5.) Notwithstanding this rhetoric, Plaintiffs do not identify a genuine issue of material fact for trial, because there is simply nothing in the record indicating that CDI Head Start and TIU 11 were successors to, "trustees" of, or joint employers with JCCCDS nor any basis for holding CDI Head Start or TIU 11 liable for the debts and obligations of JCCCDS.

### A.  Successor Liability

Plaintiffs' argument against granting summary judgment for CDI Head Start and TIU 11 rests on the premise that the duties, liabilities, and obligations of JCCCDS transferred to CDI Head Start and TIU 11 by virtue of receiving grant money from the same federal agency to operate and manage a Head Start program within the same geographical location. As a general rule, when a corporation sells or transfers all of its assets to a successor, the successor does not acquire the

---

[6] Plaintiffs present the following moral arguments. "Significantly absent from the Defendants' Motions for Summary Judgment is any contention that either CDI Head Start or TIU 11 was unable to make provisions to rectify the prior non-compliance with federal and state law as part of the interim or ongoing grant or grant supplement process or even through changes in the fee structure or additional lending of the Agency." (Docs. 82, 86 at 5.) "Nothing in Defendants' motion suggests an inability to specifically seek a grant supplement to rectify this problem." (Docs. 82, 86 at 6.)

liabilities of the transferor merely because of its succession to the transferor's assets. *Dawejko v. Jorgenson Steel Co.*, 434 A.2d 107 (Pa. 1981). Nonetheless, liability may attach to a successor if (1) the purchaser expressly or impliedly agrees to assume such obligation; (2) the transaction amounts to a consolidation or merger; (3) the purchasing corporation is merely a continuation of the selling corporation; (4) the transaction is fraudulently entered into to escape liability; (5) the transfer was not made for adequate consideration and provisions were not made for the creditors of the transferor; or (6) the successor undertakes to conduct the same manufacturing operation of the transferor's product lines in essentially an unchanged manner. If exception (6) applies, the successor is then strictly liable for injuries caused by defects in the product line, even if previously manufactured and distributed by the transferor. *Simmers v. Am. Cyanamid Corp.*, 576 A.2d 376, 386 (Pa. 1990); *see also Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 308–09 (3d Cir. 1985).

The present case does not fit into any of these exceptions. Plaintiffs' suggestion that liability should transfer from JCCCDS to CDI Head Start and TIU 11 appears to misperceive the concept of successor liability. Indeed, Plaintiffs do not suggest an actual transfer or purchase. Rather, Plaintiffs point to the following characteristics of the relationship between CDI Head Start and TIU 11 and JCCCDS to suggest that a genuine issue of material fact exists for trial: (a) the continuity of the workforce, (2) the continuity of the "client base", (3) the use of the same facilities, and (4) the receipt of a grant from the Department of Health and Human Services to perform substantially similar activities. According to Plaintiffs, these factors create a moral imperative for CDI Head Start and TIU 11 not to "seek to be insulated by the questionable contracting practices of the federal executive branch . .

. [that] should mandate a priority and practice [of] insuring [sic] employee payment." While Plaintiffs' counsel forcefully presents a moral argument that CDI Head Start and TIU 11 ought to step in to prevent "the practice of yellow dog contracts" allegedly engaged in by "the federal government," the individual plaintiffs, CDI Head Start, and TIU 11 all agree that no duties, obligations, or liabilities transferred from JCCCDS. In other words, there is no legal basis on which to find that liabilities transferred from JCCCDS to CDI Head Start and TIU 11, and all parties agree that no expectation existed that CDI Head Start and TIU 11 would compensate Plaintiffs for work performed for JCCCDS.

### B.     Remaining Suggested Bases of Liability

Plaintiffs suggest several other bases of liability all of which lack merit. First, Plaintiffs' FLSA, ERISA, and Wage Payment and Collection Laws claims lack merit, because CDI Head Start and TIU 11 were not employers of Plaintiffs during the time in which they allegedly did not receive wages and benefits for their work. Second, Plaintiffs have failed to submit anything to the court indicating that a contract existed between Plaintiffs and CDI Head Start and TIU 11 that would require CDI Head Start or TIU 11 to pay wages and benefits to Plaintiffs for work performed for JCCCDS. Third, Plaintiffs have failed to submit anything to the court supporting their unjust enrichment and quantum meruit claims. As the record indicates, Plaintiffs performed services for JCCCDS, not CDI Head Start or TIU—neither of whom could be said to have been enriched in any way by Plaintiffs performing work for JCCCDS. Last, CDI Head Start and TIU 11 owed no fiduciary duty to Plaintiffs during the time period in question.

**IV.     Conclusion**

In accordance with the foregoing discussions, the court will grant Defendant CDI Head Start and Defendant TIU 11's motions for summary judgment.

s/Sylvia H. Rambo<br>
SYLVIA H. RAMBO<br>
United States District Judge

Dated: October 28, 2008.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TERESA A. BAKER,** *et al.*, | No. 1:07-CV-0438 |
| Plaintiffs | JUDGE SYLVIA H. RAMBO |
| v. | |
| **JUNIATA COUNTY CHILD CARE & DEVELOPMENT SERVICES, INC., TUSCARORA INTERMEDIATE UNIT 11, and COMMUNITY DEVELOPMENT INSTITUTE HEAD START, INC.,** | |
| Defendants | |

## O R D E R

In accordance with the foregoing discussion **IT IS HEREBY ORDERED THAT**:

1) Defendant CDI Head Starts' Motion for Judgment on the Pleadings (Doc. 42) converted into a Motion for Summary Judgment (Doc. 54) is **GRANTED**.

2) Defendant TIU 11's Motion for Summary Judgment (Doc. 64) is **GRANTED**.

3) The Clerk of Court shall defer entry of judgment until the conclusion of the case.

                                                        s/Sylvia H. Rambo
                                                        SYLVIA H. RAMBO
                                                        United States District Judge

Dated:  October 28, 2008.